# PRIORITY SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES -- GENERAL

Case No.   EDCV 11-00895 VAP (OPx)                    Date:  August 16, 2011

Title:     FEDERAL INSURANCE COMPANY -*v*- LEXINGTON INSURANCE
           COMPANY, A DELAWARE CORPORATION; AND DOES 1 TO 100,
           INCLUSIVE
================================================================
PRESENT:        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

        Marva Dillard                         None Present
        Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFFS:                            DEFENDANTS:

        None                                  None

PROCEEDINGS:        MINUTE ORDER (1) VACATING HEARING AND (2)
                    GRANTING DEFENDANT'S MOTION TO DISMISS (IN
                    CHAMBERS)

        Before the Court is the motion to dismiss ("Motion") filed by Defendant
Lexington Insurance Company ("Defendant").  Defendant seeks dismissal of the
second and fourth claims in Plaintiff Federal Insurance Company's ("Plaintiff")
complaint.  The Court finds the matter appropriate for resolution without a hearing,
and VACATES the August 15, 2011, hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  For
the reasons set forth below, the Court GRANTS Defendant's Motion.

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

# I. BACKGROUND

## A.  Plaintiff's Factual Allegations

This action is a dispute between insurance companies over coverage for a lawsuit brought against a mutual insured, Trona Railway Company ("Trona"). (Compl. ¶ 1.)

### 1.  Plaintiff's Policy with Trona

From March 31, 2006, to March 31, 2007, Trona held a "Liability Insurance for Energy Industries" policy with Plaintiff ("Plaintiff's Policy").  (Compl. ¶ 15; id., Ex. A (Pl.'s Policy).)  Plaintiff's Policy provided Trona with coverage for up to $1 million for each occurrence of bodily injury that fell within its terms.  (Compl. ¶ 16.)  Plaintiff's Policy stated that Plaintiff would cover bodily injury and property damage, and that "[s]ubject to all of the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability: imposed by law; or assumed in an insured contract; for bodily injury or property damage caused by an occurrence to which this coverage applies."  (Pl.'s Policy at 15.[1])  Plaintiff also agreed to defend Trona against any lawsuits brought against it.  (Compl. ¶ 17; Pl.'s Policy at 16.)

Plaintiff's Policy also contained an "other insurance" clause stating that Plaintiff's insurance was "excess over any other insurance, whether primary, excess, contingent or on any other basis: . . . that is insurance: provided to you by any person or organization working under contract or agreement for you; or under which you are included as an insured . . . ."  (Pl.'s Policy at 33.)  If Plaintiff was determined to be an excess insurer, Plaintiff had no duty to defend Trona against suit if another insurer had a duty to defend Trona.  (Id.)  If no other insurer defended Trona, Plaintiff would undertake a defense, but would then be entitled to the insured's rights against the other insurers.  (Id.)

_____

[1] For ease of reference, the Court uses the page numbers on the bottom right-hand side of the exhibits which run consecutively through both exhibits attached to the Complaint.

MINUTES FORM 11                                      Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                        Page 2

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

### 2.    Defendant's Policy with Trona

From March 31, 2006 through March 31, 2007, Trona also held a "Railroad Liability Insurance" policy with Defendant ("Defendant's Policy").  (Compl. ¶ 19; id., Ex. B ("Def.'s Policy").)  Defendant's Policy provided Trona with coverage for up to $2 million for each occurrence of bodily injury that fell within its terms.  (Compl. ¶ 19.)  Defendant's Policy stated that Defendant would cover bodily injury and property damage, and Defendant agreed to "pay on behalf of the insured those sums which the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies."  (Def.'s Policy at 79.)  Defendant also stated it had the "right and duty to defend" Trona against covered claims, although it would only pay damages in excess of the "Self Insured Retention" amount.  (Id.)

Defendant's Policy also contained an "other insurance" clause stating "[i]f other valid and collectible insurance is available to the insured for a loss we cover. . . our obligations are limited as follows."  (Def.'s Policy at 91.)  The policy stated it always provided excess insurance where the insured had other insurance "(1) [t]hat is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for your work; (2) [t]hat is Fire insurance for premises rented to you; or (3) [i]f the loss arises out of the maintenance or use of aircraft, autos or watercraft . . . ."  (Def.'s Policy at 91.)  Defendant's Policy stated that otherwise, it provided primary insurances, and that "[i]f this insurance is primary, our obligations are not affected unless any of the other insurance is also primary . . . [and] we will share with all that other insurance . . . [by equal shares or by limits]."  (Id.)

### 2.    The Stevens Action

On December 4, 2006, Thomas Stevens ("Stevens"), was working at Trona's facilities as an independent contractor inspecting rail cars.  (Compl. ¶ 6.)  While working on top of a bulk storage rail car, Stevens opened a metal hatch on the top of the car.  (Id. ¶ 7.)  As he opened it, the hinge on the hatch malfunctioned, causing the hatch to ricochet down and hit Stevens's right knee.  (Id.)  The impact shattered his knee and left a gash along his right leg.  (Id.)  Stevens's employer provided workers' compensation benefits to him and determined that he was 65% disabled.  (Id. ¶ 8.)

MINUTES FORM 11                                          Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                          Page 3

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

Stevens filed a civil action for damages against Trona, first in this Court (the "Federal Stevens Action"), and then, after that action was dismissed, in state court (the "State Stevens Action"). (Compl. ¶¶ 9-10.) Trona notified Plaintiff of the Federal Stevens Action soon after it was filed in December 2008, and Plaintiff investigated the claim and agreed to provide a defense to Trona in that action and subsequently in the State Stevens Action. (Id. ¶ 12.)

Trona also notified Defendant of the Federal Stevens Action, but Defendant denied coverage and refused to provide a defense or participate in the defense of Trona, claiming that its policy provided Trona with only excess insurance. (Compl. ¶ 13.) In early 2011, Defendant reversed its denial of defense and took part in the settlement of the State Stevens Action. (Id. ¶ 14.)

On February 10, 2011, Stevens and Trona settled the State Stevens Action, with Trona agreeing to pay Stevens $1 million. (Compl. ¶ 11.) Plaintiff agreed to pay $500,000.00 of the settlement and Defendant agreed to pay $500,000.00. (Id. ¶ 14.)

## B.   Procedural History

On June 7, 2011, Plaintiff filed its complaint ("Complaint") against Defendant, seeking equitable subrogation and equitable contribution. (Doc. No. 1.) Plaintiff asserts that the "other insurance" clause in its Policy with Trona makes Plaintiff's coverage excess to Defendant's, while the "other insurance" clause in Defendant's Policy does not do the same. (Compl. ¶ 21.) Plaintiff seeks to recover (1) $181,106.47 it paid in defense fees and costs in the Federal and State Stevens Actions, and (2) $500,000.00 it paid as part of the settlement in the State Stevens Action. (Id. ¶¶ 26-37.)

On July 13, 2011, Defendant filed the Motion and a Request for Judicial Notice.[2] (Doc. Nos. 5, 6.) On July 27, 2011, Plaintiff filed its opposition to the

---

[2] A court may consider documents on its own docket without taking judicial notice of them. As Defendant's Request for Judicial Notice attaches only a copy of
(continued...)

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

Motion ("Opposition").[3]  (Doc. No. 12.)  On August 1, 2011, Defendant filed its reply in support of the Motion ("Reply").  (Doc. No. 13.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In addition, the Court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

 "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

In other words, the allegations must be plausible on the face of the complaint.  See Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line

---

[2](...continued)
the Complaint, the Court does not address it further here.

[3] While under Local Rule 7-9, Plaintiff should have filed its Opposition by July 25, the Court signed a stipulation by the parties to modify slightly the briefing schedule for the Motion.  (Doc. No. 14.)

MINUTES FORM 11                                        Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                        Page 5

between possibility and plausibility of 'entitlement to relief.'"  Id. (citations and internal quotations omitted).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).  A court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

If a Court concludes dismissal is appropriate, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend should only be denied on a showing of bad faith, undue delay, prejudice to the opposing party, or futility of the amendment.  Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1016 (9th Cir. 1999).

## III. DISCUSSION

Plaintiff asserts it should be reimbursed the costs of defense and settlement in the Federal and State Stevens Actions because under the "other insurance" clause in Defendant's Policy, Plaintiff's insurance coverage is excess to Defendant's. (Compl. ¶¶ 21-22.)  In its first and third claims, Plaintiff seeks reimbursement based on equitable contribution.  (Id. ¶¶ 26-28, 32-34.)  In its second and fourth claims, Plaintiff seeks reimbursement based on equitable subrogation.  (Id. ¶¶ 29-31, 35-37.)

Defendant seeks dismissal of Plaintiff's second and fourth claims for recovery based on equitable subrogation.  (Mot. at 2.)  Defendant argues Plaintiff cannot recover on its equitable subrogation claims under the only two available theories. (Id. at 4.)  First, Plaintiff does not allege in the Complaint that it provided "true" excess insurance to Trona.  (Id.)  Second, Plaintiff's claim that the "excess other

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

insurance" clause in its policy should trump the "pro rata other insurance" clause in Defendant's Policy is not supported by California law.  (Id. at 5-7.)  On the latter point, Defendant argues that while no published California decision has interpreted "other insurance" clauses with the precise wording at issue here, California courts generally require pro rata allocation between primary insurers when "other insurance" clauses collide.  (Id.)

Plaintiff argues it states a claim for equitable subrogation against Defendant because Plaintiff's Policy contains "precise language" stating that it provides excess coverage, while Defendant's Policy does not contain equivalent language.  (Opp'n at 7.)

First, as Defendant notes, Plaintiff does not and could not argue its policy provided "true" excess insurance to Trona.  Plaintiff's Policy clearly states it provided coverage for an occurrence falling within it terms and thus provided primary insurance coverage.  See American Cas. Co. v. Gen. Star Indem. Co., 125 Cal. App. 4th 1510, 1521 (2005) (internal citations omitted) ("Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. . . . [while] excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage.").

Moreover, it is a "basic rule of California insurance law that an 'other insurance' issue can arise only between carriers on the same level of coverage." JPI Westcoast Const., L.P. v. RJS & Associates, Inc., 156 Cal. App. 4th 1448, 1460 (2007) (quoting Carmel Dev. Co. v. RLI Ins. Co., 126 Cal. App. 4th 502, 513 (2005)); see also Dart Indus., Inc. v. Commercial Union Ins. Co., 28 Cal. 4th 1059, 1078 n.6 (2002) ("Other insurance clauses become relevant only where several insurers insure the same risk at the same level of coverage.  An other insurance dispute cannot arise between excess and primary insurers.") (internal citations

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

omitted).  Accordingly, the issue here is whether the "other insurance" clause in Plaintiff's Policy makes Plaintiff's coverage excess to Defendant's coverage.

Generally, "an insurer's coverage terms will be honored if possible, [although] there are exceptions to this rule."  Travelers Cas. and Sur. Co. v. Century Sur. Co., 118 Cal. App. 4th 1156, 1159 (2004) (citations omitted).  The plain language of the "other insurance" clause in Plaintiff's Policy states that Plaintiff provided liability coverage that was excess to any other insurance.  (Pl.'s Policy at 33.)  The "other insurance" clause in Defendant's Policy states that where there was another primary insurer, Defendant would share the cost of coverage with that insurer.  (Def.'s Policy at 91.)  In order to determine their meaning, however, the "other insurance" clauses must be examined in the context of the insurance policies as a whole.  See Carmel Dev., 126 Cal. App. 4th at 510-12 (looking at insurance coverage policies broadly to determine coverage and the relevance of other insurance clauses).

Many courts in California have demonstrated an unwillingness to allow insurers to "reduce a primary coverage obligation into a more limited excess liability" by means of an "other insurance" or "escape" clause.  See, e.g., Century Surety Co. v. United Pac. Ins. Co., 109 Cal. App. 4th 1246, 1254 (2003) (holding primary insurer liable for defense and indemnity of claim for "sound jurisprudential and public policy reasons").  In Century, four primary insurers covered the insured; three of the insurers had "pro rata" provisions similar to the language in the "other insurance" clause of Defendant's Policy, and one insurer had an excess insurance clause similar to the "other insurance" clause in Plaintiff's Policy.  Id. at 1251-52.  The Court of Appeal held that it would be unfair to give effect to the "escape" clause while not giving effect to the pro rata clauses, and found that "the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment."  Id. at 1260.

In so holding, the Century court noted that to allow a primary insurer to avoid liability by giving an excess "other insurance" clause priority over a pro rata "other insurance" clause "is completely unrelated to the original historical purpose of such 'other insurance' clauses, which was to prevent multiple recoveries by insureds in cases of overlapping insurance policies providing coverage for the same loss."  Century, 109 Cal. App. 4th at 1258.  The court also focused on the "equitable

MINUTES FORM 11
CIVIL -- GEN                              Page 8                    Initials of Deputy Clerk:   jh-relief

EDCV 11-00895 VAP (OPx)
FEDERAL INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY
MINUTE ORDER of August 16, 2011

principles designed to accomplish ultimate justice in the bearing of a specific burden" present in the insurance context which made this outcome appropriate.  Id. at 1260 (quoting Signal Cos., Inc. v. Harbor Ins. Co., 27 Cal. 3d 359, 369 (1980)).

Similarly, in Travelers, the Court of Appeal upheld the trial court's determination that it would be "inequitable" to honor an excess "other insurance" clause and allow a primary insurer to avoid providing coverage where a second primary insurer had a policy with a pro rata "other insurance" clause.  118 Cal. App. 4th at 1165.  The Travelers court also focused on public policy and principles of equity in finding that the two "other insurance" clauses were "mutually repugnant provisions" and thus should both be ignored.  Id. at 1164.

Although the California Supreme Court has not spoken directly to this issue, it has recognized the "modern trend is to require equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies."  Dart Indus., 28 Cal. 4th at 1079-80.  Other courts in this district to consider this issue have also refused to enforce similar provisions on the grounds that it would be against public policy.  See USF Ins. Co. v. Clarendon Am. Ins. Co., 452 F. Supp. 2d 972, 1000-01 (C.D. Cal. 2006) (refusing to enforce "excess defense" clause in insurance policy on the grounds that it was inequitable to permit an insurer to escape its bargained-for obligation to provide a defense).

To interpret Plaintiff's Policy as Plaintiff suggests would allow Plaintiff to walk away from its primary coverage obligation on the basis of an excess "other insurance" clause buried in a general liability policy.  The Court finds that such an outcome would be against public policy, and inequitable to Defendant.  Accordingly, the Court finds that Plaintiff, like Defendant, provided primary insurance coverage to Trona, and this coverage was not excess to Defendant's primary coverage.

Having found that Plaintiff and Defendant both provided primary insurance coverage to Trona, equitable contribution rather than equitable subrogation is the only means by which Plaintiff could recover from Defendant.  Equitable subrogation allows an excess insurer to sue a primary insurer for recovery where the excess insurer covered a loss for which it was not responsible.  "The aim of equitable subrogation is to place the burden for a loss on the party ultimately liable or

responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor." <u>Fireman's Fund Ins. Co. v. Maryland Cas. Co.</u>, 65 Cal. App. 4th 1279, 1296 (1998) (citations omitted); <u>see also</u> <u>Travelers Cas. and Sur. Co. v. Am. Intern. Surplus Lines Ins. Co.</u>, 465 F. Supp. 2d 1005, 1027 (S.D. Cal. 2006) ("Principles of equitable subrogation rather than equitable contribution apply to disputes between insurers when the insurers do not share the same level of risk.")

Equitable contribution, however, serves to "apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others." <u>Fireman's Fund</u>, 65 Cal. App. 4th at 1296; <u>see also</u> <u>RLI Ins. Co. v. CNA Cas. of Cal.</u>, 141 Cal. App. 4th 75, 84 (2006) ("Equitable contribution allows for loss sharing among coinsurers that share the same level of liability on the same risk as to the same insured.") (internal citations and quotation marks omitted).

As Plaintiff and Defendant both provided primary insurance coverage to Trona, any recovery between the two of them must be based on the right of equitable contribution rather than equitable subrogation.  Accordingly, Plaintiff cannot state a claim against Defendant under equitable subrogation, and thus its second and fourth claims should be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion and DISMISSES Plaintiff's second and fourth claims without leave to amend.

**IT IS SO ORDERED.**